All right. So, Gibbons v. Gibbs. Mr. Pershing. Good morning, Your Honors. May it please the Court. Steve Pershing for Appellant Christine Gibbons. The trial court's exclusionary rulings are the reason that we're here. There were two layers of those exclusionary rulings and put together, they just tied our hands at trial. Well, can I ask about things that seem like they've tied your hands at trial? Can you give me, why in the world did you not depose the defendants before trial? It seems like so many of these challenges stem from the fact that the defendants themselves weren't deposed. Well, Your Honor, discovery was drastically truncated. I don't care how truncated discovery is. I could imagine we would want to depose the defendant. I did very much, and we were unable to because of schedule. Did the district court refuse to let you depose the defendants? No, Your Honor. We only had a very short time to do it. Did you move to compel their depositions? No. They would have consented, but only at a time when I was unable to do it. There was just no way to have to do anything. But to be clear, the trial court gave you an early trial date, and you didn't object to the trial. And there's this feeling in your grief that, like, the trial court treated us so unfairly by making us go to trial super fast. Now, in general, my sense is that plaintiffs as a group would like to go to trial and would like to go to trial. But regardless of all, isn't that all atmospheric? You did not object to the trial date. You did not ask the district court to continue the trial date. And you're not arguing an appeal that the district court erred by forcing you to go to trial so early. Your Honor, we felt we could not. Yeah, you made a hard choice, but that's not reversible error. We're not contending that the— Well, you do. Throughout your grief, you sort of complain about the speedy trial date. You say we didn't have enough time for discovery. But either you're making an argument that that was wrong, or none of that matters. I just don't think you can do this. Well, we had to do this, and that explains these problems we have. Well, I don't think we're contending that it was discovery problems that caused— No, no, no. To the extent the district court said you can't offer evidence of X unless you can give me some foundation to believe Y, the way we normally do things like that in civil litigation is discovery. That's how we get evidence of Y. And in a case where a party doesn't avail themselves of discovery, they don't seem super well-positioned to say we weren't— Like, the trial court erred in excluding something because we couldn't link X to Y. Why couldn't we link X to Y? Well, either A, we didn't have to link X to Y, or alternatively, we just didn't have a chance. That is my sense of why I think virtually everything you're objecting to on appeal stems from the lack of discovery in this case. Well, Your Honor, the difficulty we have with the two pretrial rulings is not just that the court could not tell whether a showing was made. The court said those—because it didn't want to re-litigate the 2020 election on its merits— But I guess when I look at the transcript, what I see Judge Ballou saying over and over and over again is, I'm not going to re-litigate the 2020 presidential election. I'm not going to re-litigate in general what happened anywhere else. If you can connect it to this situation and these people, I will let you do it. Can you do that? Actually, I see Judge Ballou saying over and over again, as of right now, I don't see any connection to these people and this situation. That's what he says over and over and over again in the transcript. Your Honor, I think the difficulty that he ran into—and he was such a decent judge. We're not—this is not personal, right? But the partisan mistrust we're talking about was kept out on a blanket exclusion. But I don't see—you keep saying that. When I read what Judge Ballou says, I don't see him saying that. I see him saying, if you can connect it to these people and this situation, I'm open to revisiting this. But what he says is what we're not going to do is have a global re-litigation of the 2020 presidential election or its aftermath. But he says—I think every single time he rules against you, almost, he says, absent the ability to connect it to these defendants and this hiring decision, I'm not letting you do this. He did not allow us even to— Right. But isn't your argument that the court did not allow you to make the connection, the very connection that you needed to make to prove your complaint, you weren't permitted to argue? Your Honor, that is exactly our concern. And, again, it's just— This is a complaint about a politically motivated dismissal, and yet, as I read it, you were not permitted to talk about political motivation. That's exactly the problem. Well, is that why— I'm sorry, Your Honor. It seems to me, from my read, there was—there were restrictions about the January 6 event and the 2020 litigation coming in. But you were allowed to produce all the evidence of political activity you wanted about the hiring and—or failure to reappoint this plaintiff. And all the stuff around—at least you didn't object to any restrictions about the facts you alleged in your complaint and all that stuff. I mean, I read the complaint again last night. I mean, it's 64 paragraphs. And I know complaints. Normally, not the end of the story, but you had two things about January 6. You had 64 paragraphs of all these irregularities that you pointed out around Lynchburg. Your Honor— Those were political things. That was your case, mainly. I think our contention on appeal is that key motive evidence was excluded. Blanket exclusion at the final pretrial conference. And let me put it this way. The judge felt, I think, you know, well-intentioned that the claim of motive would necessarily require deciding whether the defendant's grudge about 2020's election result was—had a basis or not. That's not it. You don't ever have to prove that a grudge was— Why is it abuse of discretion when you're able to prove and introduce all the evidence you want about these particular defendants' actions with respect to this particular plaintiff? And even these particular defendants' actions in general concerning Lynchburg elections. All those things in the 64 paragraphs in your complaint. Why isn't it okay for the district court to say, all right, you want to add to it their views, participation, whatever, in January 6th? But that's an explosive thing, and it may have some probative value. But any probative value is outweighed by the prejudicial impact of that, given that there's so much you could have done about the local election. Well, Your Honor, I don't think there was a 403 ground that the judge asserted. He asserted it was not relevant. He said that you don't litigate the election result, and our point is that you don't have to litigate the election result in order to decide that a grudge about it motivated these defendants. Okay, so can I bring this to a, like, more specific level? Because one of the other challenges I have is I have some real questions about whether the vast majority of what you're arguing was preserved. Because what I hear Judge Ballou saying is, as a global matter, I'm not going to allow X, but I might allow Y. So I'd like you to be as specific as you can. What specific evidence, not evidence of blank. I'm not talking about, quote, evidence of blank. What testimony from a witness or what documents are you asserting that the district court improperly excluded? All right. A witness was going to say the following sentence. He said they couldn't say it. Like, that level of specificity. Mostly you get it from the pretrial conference. I have JA93. Let's go, if you would. The court excluded any evidence related to that. No, no, no. That's not the question I'm asking. What evidence did you want to offer? A witness would have testified blank. A document would have been admitted that said blank. I'm not asking for the scope of Judge Ballou's ruling. I'm asking what evidence do you claim that he wrongfully excluded, that you were ready to go? I had it. I was going to put a witness on the stand. They were going to say X. What is that? Well, Your Honor, we believe that the evidence that Defendant Gibbs believed the 2020 election was fraudulent. Don't forget the context that Biden narrowly won Lynchburg that year. And certain Republican folks were convinced that she had somehow done something wrong. And where did you proffer the specific evidence that you believe the district court wrongfully excluded? The best proffer we have, Your Honor, is in the final pretrial conference. The result of it was a blanket exclusion. If we respect the court's rulings, we can't be divided. And is that the JA site you just gave us a minute ago? Yep. And then also JA 100, where that's transcript 39 of the final pretrial, where the court excluded evidence of parallel events in other fifth congressional district counties. Go ahead. I'm sorry. Oh, Your Honor, forgive me. No, no. You finish your thing, but I do have a follow-up to what you just said. What we proffered was that there was evidence that these defendants had participated and or collaborated in efforts by Republicans in other counties in the fifth congressional district, that's Steve Troxell's district he represented on the Republican Central Committee, to house their registrars as soon as Republican folks took majorities in those other counties. And the judge excluded it as a blanket exclusion. Well, so a couple things. I mean, I think Judge Hyten's question would apply here, which is, is there an individual that you were, you know, what individual, what were they going to say? For example, did you say, I'm going to call these other registrars who weren't reappointed? Did you ever say, I'm calling John Smith, Mary Jones, these are registrars from these counties, they're going to testify about personal knowledge they have? We'd already named the registrars in other counties who had been ousted. Kelly, I forget the name. Did you put that in the record so the district court knew the specific people that you were going to put on the stand and what you thought they were going to say? Well, they were on our witness list, Your Honor, and they were disclosed in discovery, but the court, you know, gave this blanket exclusion. We couldn't even call them. Well, didn't he say this on the very page you're talking about, JA100? I'll let you proffer the evidence at trial that you would otherwise want to put on if you want me to reconsider it. But I would need to know specifically what the evidence is before we get there. And then when you go to the morning of trial, the reconsideration of it, he takes up the motion to reconsider, and there he says, he grants it. He says, so to the extent that the motion to reconsider, no, he says, the motion to reconsider is granted to the extent there's clarification that it wasn't intended to circumscribe specific actions taken by the defendants. So it sounds like he's saying you can ask these defendants things about their actions. That's not how we understood it at the time. But I'm just reading it. I mean, isn't that what it says? It does not stand in a vacuum. The judge had already said that any evidence of this collusion or conspiracy was irrelevant as a general proposition. So if we're going to respect the court's rulings, it's very hard to just go in there. You mentioned that he says irrelevant, and I agree that he says irrelevant. There are other parts of the ruling where Judge Ballou says it's a distraction, it's sort of a side issue, it's confusing. All of that is in the language of 403, right? It is, although his- He certainly says things that are definitely in the language of 403. Well, distraction is one thing. Distraction, I think, is something you can say is it sounds in relevancy. No, it sounds in 403, as in evidence, though relevant, may be excluded, unless it might bring us down a rabbit hole and risk confusing. And that's classic 403 language. That's true, but he also said I think it's irrelevant.  I certainly agree the judge also said that, not dispute. So, you know, we can't, it's like argument against a phantom. If the judge says go, you know, this is irrelevant. So is, if you'd like to identify specific evidence that you'd like to offer, I'll reconsider. And then no one offers the evidence they'd like to offer, and so now we're in a world where, I just feel like I'm stuck in a world in which the parties present, among other things, diametrically opposing views on the question. How would Judge Ballou have ruled had the plaintiff attempted to do X? And the answer is I don't know, because the plaintiff never attempted to do X. And it feels like on appeal I should not be wondering how Judge Ballou would have ruled on a specific question when the plaintiffs didn't proffer what the specific evidence they wanted to offer was. Well, Your Honor, we did our best at the final pretrial. He had a blanket exclusion. That's where we were. We would have had to defy him. Let me just focus on the voir dire part of our case, because I don't want to lose sight of that. Springing from this judgment.  So let me ask you a threshold question on voir dire. Have you found any case in which any trial court was ever found to have abused its discretion in declining to ask about a potential juror's political preferences or affiliations? No, and that's a little maddening. The answer is zero, right? I haven't found any. That doesn't mean that the standard doesn't apply. The standard is, and this is from Lancaster, a Fourth Circuit case, right? There has to be reasonable assurance that prejudice would be discovered if present.  We've got to think about the context here. This is a place where, you know, the jury is a microcosm of the public. We have to think about the fever that gripped this one political party. That is something we are entitled to probe. As we say in our brief, you've got to be able to look to see if the jurors, the would-be jurors, shared the bias received from the defendant's head. We all agree, do we not, that there is actually literally no right for the lawyers to ask the jury any questions in voir dire whatsoever. The judge, if it wants to, can say none of you all are asking jurors any questions, right? That's true, but that's not what we're dealing with is an exclusion either of questions we were to ask or questions that the judge would ask. So I don't think that's a problem. I guess what I'm saying is these cases, again, tell me if I'm wrong, my sense is the cases that reverse for failure to have inadequate voir dire about specific topics are overwhelmingly about race discrimination and overwhelmingly in the context, well, race discrimination, race discrimination and something that would give rise to a challenge for cause, not the exercise of a preemptory challenge. Is that descriptively accurate? I won't dispute it, but I do think that one of the cases we've got says that at least in the criminal context, that if you deny a challenge for cause and that is found improper, it won't necessarily be because the challenge for cause would have succeeded. If there's also room for a lawyer in voir dire to, sorry, even if they had to dislodge a juror using a preemptory challenge, there's still a problem when you prohibit the probing into the matters you mentioned. It seems to me that political bias of this kind in this feverish climate is fully the equivalent of race bias in race cases. This is political bias in a political case. And I think that's a fair comment that political bias in a political case is fair game. It's a general matter. But, I mean, look, I'm nothing great, but, I mean, in civil cases, go to courtrooms throughout the country day after day after day and judges aren't allowing specific voir dire questions as the parties want. I mean, I did that over and over and over. In my sort of area, I wanted specifics and just, I mean, judges, it's normal because a judge has to balance a bunch of interests. They have to balance the interest of detect and bias. They have to balance the interest of the length of the trial. They have to balance the interest of the privacy of the jurors. They got a lot going on. And if you, as I read what the district court was doing, and I appreciate your comments, despite your objections to it, your appreciation of the district court, but the district court looks like it's, you know, doing its best to balance all those things. And we have an abuse of discretion standard. That just seems like it's hard for you when he did talk over and over about bias. You wanted more. When I was a trial lawyer, I wanted more. Rarely did I get it. Your Honor, may I answer? I know my time's up. Yes, please. The balance is the issue. Yes, there are many interests to consider. But when this judge decided that the 2020 election was irrelevant, he cut our hands off by saying there's no way you are going to be able to show that a grudge about that election is relevant to this decision not to reappoint. That was key evidence. And then he said, because it's irrelevant to the case, I'm not going to let that, for that reason, I'm not going to let you ask the jurors about it. And our problem is if they harbor that same bias, the denial of those questions was tantamount to allowing those biases into the jury box. That, it seems to me, is on the reversal side of that line. However well-intentioned the judge may have been to try to limit the scope of the trial, it's still true that you don't ever have to prove a grudge was baseless in order to prove someone was motivated by it. I just don't think the relevancy parameters that the judge laid out that we, through trial, tried to respect were sufficient to cause, to bring about the Lancaster reasonable assurance that prejudice would be discovered if present. Thank you very much.  You have some time in rebuttal, Mr. Harsing. Ms. O'Brien. Good morning, Your Honors. My name is Blair O'Brien. I'm here today with my partner, David Corrigan, on behalf of the Appellees Betty Gibbs and Stephen Troxell. And may it please the Court. In August 2024, a jury in the Western District of Virginia considered the appellant's claim that she had not been reappointed to serve an additional term as the General Registrar and Director of Elections for the City of Lynchburg for political reasons. After hearing four days of evidence and testimony from myriad witnesses, the jury concluded that the appellant had not proven her case. Forgive me for not knowing this in detail, but I referenced with your colleague the paragraphs of the complaint that talk a lot about allegations of activities that happened in Lynchburg that they referenced in the complaint. Was that type of evidence introduced at trial? Did the plaintiff introduce the evidence or attempt to ask questions about things generally that are alleged in the complaint? Certainly, Your Honor, yes. And I can point specifically to the number of witnesses that Ms. Gibbons called, including a sitting delegate in the House of Delegates here in Virginia, who testified to what he witnessed at local Republican committee meetings and the defendants. Were the witnesses permitted to testify about the, quote, big lies surrounding the 2020 presidential election? Your Honor, no testimony was solicited from any witnesses in that regard. Because wasn't it excluded by the court? Isn't that what was excluded by the court? Your Honor, the court did grant the motion in limine as to testimony related to the 2020 presidential election. Which is what I just asked about. And a motion in limine limits the evidence. So it wasn't solicited because the court had excluded it, correct? Well, I suppose the court indicated what he believed was going to be relevant. The court didn't rule. You just said the court ruled on the motion in limine. The court did grant the motion in limine as to the 2020 election. So tell me how. I'm sorry. No, you finish. How is the political motivation not relevant in a case alleging termination due to political reasons? Your Honor, I suppose I will call back to what my friend on the other side talked about earlier, about whether or not this was a 4-1 or a 4-3 ruling. What did the court, did the court say 4-3? I believe the court did say 4-3, and certainly we moved under Rule 4-3. We argued that it was more prejudicial than probative. I asked you about relevance, so let's start there. How is the political motivation not relevant in a case that involves an allegation that someone was terminated for political reasons? Your Honor, evidence of political motivation as to a hiring and firing decision or appointment or reappointment certainly would be. Attendance at a rally more than three years earlier becomes a question of whether or not that's actually relevant. Well, that provides the entire context for their theory, for plaintiff's appellant's theory of the case. I'm not saying whether it was right or wrong, but that's the entire context. I mean, you've read their complaint, I'm sure. The very first paragraph starts to tell the story and provide the context of what happened here, and the granting of the motion in limine, in my view, cuts out the entire context of the complaint. Does it not? Your Honor, it doesn't, and that's because of the quantity of evidence related specifically to both 2020 and Lynchburg and subsequent years in Lynchburg and even before 2020 and Lynchburg related to interactions between Republicans and Democrats local to the Lynchburg Republican Committee and Lynchburg elections. Can I ask you about the piece of evidence whose exclusion I'll say is high on my list of troubling? And that this is Mr. Troxell attends this other meeting in the other county, which shortly after the registers in that county did the exact same thing that they did in Lynchburg. Why is that excluded? Your Honor, I— That seems—so let's go to 401. Evidence having any tendency to make any material fact more or less likely. That seems like it definitely has some tendency to make some material fact more likely. Your Honor, I think as an initial matter, as I believe Judge Quattrobon pointed out, that ruling was actually clarified on the first day of trial that evidence specifically related to our clients, to the appellees, was admissible to the extent that the appellant wanted to solicit that information. And as I stand here today, Your Honor— So you would say as to that, at minimum given that, at minimum it was not clear that Judge Ballou would have excluded that particular evidence. Certainly. And as I was about to say, as I stand here today, I don't know what that evidence would have been. As Your Honor has pointed out, there was very limited discovery here. I'm not sure who or what witness would have been called to testify about Mr. Troxell's presence at any other electoral board meeting at any other place in the commonwealth. I think Judge Quattrobon had a question earlier and I talked it over. No, no, no.  I had a preliminary question. I have these categories in my head as January 6th in one bucket and in the actions with other counties in another bucket. So I'm talking, I think there's a, based on the questions I asked earlier and what you just said, I think there's a preservation issue about the other county issue and the fact that it was modified. But going back to the January 6th, isn't it fair to say that the district court, in terms of preservation, I'm not asking you about 403, but isn't it fair, didn't the plaintiff identify specific evidence about January 6th, like posts? I mean, that seems to me to be more clearly identified. I'm sure there was some talk about it more broadly, but I think they identified specific posts, I think, from Mr. Troxell. So preservation alone, in the context of that, at least those posts clear enough that that was preserved? Your Honor, I don't think so. Perhaps as to the two exhibits that were actually offered in trial, I think it would have been. I'm not going to say that they didn't preserve their proffer about evidence they actually offered. Yeah. Well, and forgive me if I've not articulated that well. I do think the two exhibits, I believe they were 82 and 89 that were offered at trial. The fact that they were offered and excluded has been preserved. I'm not confident they were actually included in the JA before the court. I got you. But whether they were, the context was apparent in the motion limine or when they actually were introduced, that's preserved. So for those issues at least, you have, it hinges on whether it's relevant and whether the unfair prejudicial value outweighs any appropriate value. Is that right? That's correct, Your Honor. All right. Was there any identification of any other specific evidence about the January 6th other than those exhibits? Other than those two exhibits that were offered and excluded, the answer to that question is no, Your Honor. Those two exhibits were blog posts by Mr. Troxell? They were two of three blog posts by Mr. Troxell. One of the three was admitted and there was substantial cross-examination about that third exhibit. I'm sorry, I don't know if I didn't hear. I apologize, Your Honor. There were three exhibits, Your Honor, or three blog posts by Mr. Troxell that were at issue. One of them was admitted and was the subject of significant and effective cross-examination by counsel. The other two were excluded as not dealing directly with fraud concerns about the city of Lynchburg. Okay, so that is a clarification because that suggests that notwithstanding what you're now saying was the morning of clarification that we can ask the defendants about things the defendants did, now it turns out we can't actually ask the defendants about some of the things the defendants did because these are two blog posts by one of the defendants. Well, the blog post that was admitted led to, as I just said, very— Right, but that's like—I mean, that cuts both ways, right, which is one possibility is, oh, it's no big deal because you got the one, and the other is like, wow, if I was able to really hit him pretty hard with the one, maybe I could have hit him really, really hard if I had all three. Because, again, I have not read the cross-examination, or at least not in detail or recently, but maybe one of his responses to the one blog was like, yeah, but that's taken out of context, and yeah, that's that, and that does blah, blah, blah. And he's like, really, because it turns out that you said similar things two other times, right? I mean, there's an obvious explanation of how getting only one of three makes the problem worse, not better, because it deprives you of the cumulative effect of all three. Perhaps, but I think this goes to what the court has already been discussing, which is the district courts need to balance interests here and to focus— As you answer that, I want to hear that. But just to understand, I don't think the district court ever— my understanding of what the district court said on the first day of trial on the motion to reconsider is I'll let specific conduct of the defendants about activities in other counties come in. That was about the other counties' evidence, not January 6th. That's correct, Your Honor. And so the question—I don't think they ever said you can do defendants and activities about January 6th. I still think that leaves Judge Highton's questions important. You let one in, but not others. And there needs to be a justification why that wasn't improper. Well, the one blog post that was admitted was a post directly about election fraud in Virginia, including specifically in Lynchburg. And so that went directly to the issues at play when we're deciding whether or not we're going to reappoint a registrar. So if I understand it then, that's along the lines that I think it sounds like the parties agree on what happened there, that the district court said you can introduce evidence about political bias related to the local activities in Lynchburg. But to the extent you're talking about doing it about January 6th, that either is not relevant or the probative value is outweighed by the unfair prejudicial impact? Well, specifically as to January 6th, the evidence that was suggested in the complaint that I understood may have been solicited at trial was directly related to Apolyte Gibbs' presence there on that date. There was no allegation and no evidence that I'm aware of that Mr. Troxell was ever there. So if we're talking about Mr. Troxell's statements in a blog post that he made about national election concerns, January 6th was really never at play with him. I got you. It was the national election concerns versus the local issue.  And that line of questioning on cross-examination got into Mr. Troxell's more global feelings about the trustworthiness of members of various political parties, whether or not individuals who were Republicans were more likely to be trustworthy than Democrats as election officials. That was explored at trial? It certainly was, Your Honor, yes. There was direct testimony solicited and given on that point. So, again, it goes back to the courts need to focus the jury because to ask the jury, to suggest to the jury that it needed to resolve questions surrounding the validity of the 2020 presidential election I think falls. I don't think that appellants want to resolve the validity of the 2020 election or not. That's what Mr. Pershing argued when he got up here. It's about the defendant's views of what happened at the 2020 election and that being a motivating factor for why they got rid of appellant. I think that's where, that's what the court thought. I think that's what the district court thought, that appellant was trying to rehash the entire 2020 election thing. I don't think that's what appellant was trying to do, but he can say it again when he gets up here again, I guess. I suppose, but part of the problem here, Your Honor, is that we are trying to guess what they were trying to do because we don't really know what the evidence would have been. The evidence of even Ms. Gibbs' presence, what that evidence would have been is not in the record before the court. Certainly, the complaint directly read that there was going to be myriad assertions of, I guess, irrationality by the appellants. I apologize, Your Honor. No, no, no. I'm sorry to cut you off before you do that. I mean, that seems to me less, I mean, maybe that's a preservation issue and you don't know. It seems to me, given the law, with the federal rules of evidence changes that allows you to satisfy the requirements of the proffer requirement without a formal proffer, the district court had a good sense that the plaintiff was going to ask, that the defendants were going to be asked questions about their views of the 2020 election. Maybe you have enough on preservation, but let's assume that was preserved. Don't you still, I understood the district court, maybe I'm wrong, to say, look, we got a bunch of evidence about local politics and maybe the information about the 2020 election is probative, but it is so inflammatory that it's going to hijack the trial and it's unfairly prejudicial. Isn't that a fair way of reading the district court's decision? Your Honor, I hope it's a fair way of reading our motion because that's exactly what our argument was, is that we believed that there was going to be, and, in fact, there was ample evidence related to the Appalese political activities locally in Lynchburg, that the inflammatory, and I think it's important to remember the context of this. This was in August of 2024 in the middle of another very contentious presidential election, that the court was having to make these decisions about what was going to be admissible and what wasn't. And in the context of a case that did have testimony from a sitting member of the House of Delegates about the political activities of the Appalese in this case, that had another witness who worked in the... What did the sitting delegate testify to about the political activities of the Appalese? He testified that he was present at Lynchburg Republican City Committee meetings that were also attended by Ms. Gibbs and Mr. Troxell, at which discussions about whether or not registrars should be replaced and how that should happen occurred. So, again, that is... Right, but what about their views on the 2020 election being stolen and a fraud and all of that? Testimony was solicited from Mr. Walker, the delegate, Delegate Walker, as to his opinion about whether or not the motivations of the two Appalese were political or not. He opined that it was. He didn't specifically address the 2020 election and was not asked about it, Your Honor. Because it was excluded. I don't know because... That takes us back to where we started this argument. Yes. Whether it was excluded or not. But on that point, I think going back again to Judge Quattlebaum's point of sort of what's the harm here, there was ample evidence related to the activities of the clients and the motivations of the clients, not only just in relation to their political actions and their political motivations, but also the motivations, the other motivations that they had in relation to making this decision. So if we're talking about what evidence substantiated the jury's verdict here, there was significant testimony about the lengthy relationship between Ms. Gibbs, the Appalee, and Ms. Gibbons, the appellant here, and the Office of the Registrar. But I don't know if that helps you because that's your defense evidence. Because at a very high level of generality, I understand the dispute in this case to be as follows. The plaintiff asserts that this was part of a fairly organized to some level effort, I'll say, switching the partisan turnover of the various groups of these three people in Virginia to get rid of people like the plaintiff, and that that's why they fired her. And your defense was that's not why we fired her. We fired her because her and this new member of the board hated each other and had hated each other for a long time. And maybe that's right, maybe that's not. But I think their argument, as I understand it, is you're making us fight with our hands tied behind our back because you get to introduce all the evidence that supports your theory, like these two women hate each other, and that's not a partisan, necessarily an improper partisan motive, but they don't get to introduce all the evidence. Because once you put forward that theory, their obligation, whether it's the burden or not, or it's just people who want to win their case in front of a jury, is to say, refute the explanation that it's just these two people hate each other. And like, cool, here's how I'll refute it. I'll show it was part of a broader effort, and their response is, and yet we're not allowed to introduce the broader effort, which means their story, their inability to tell their complete story makes your story look more plausible than it would otherwise. What's the response to that? I certainly understand that, Your Honor, and I would point to— It's like that summary chart in the prior case, only in trial form. Go ahead. I was fortunate to listen to that argument before I had this one, Your Honor. I would point to some of the evidence that was brought out from Ms. Gibbs by counsel. There was a Facebook post from 2020 that she was cross-examined about, directly about activities in Lynchburg, election fraud in Lynchburg, her concerns about the validity of the 2020 election as it was happening at the time. Does that really give anything to harmlessness? Like, well, despite the fact that it may have been wrong to not let her do something else, she got to do a lot of stuff, and maybe it's harmless, but that doesn't really address whether it was an error. Well, I think whether or not it was harmless and whether or not there was a substantial right that was affected, which is the standard for the court. Sure, sure, sure. Totally. I just think that seems like an argument about harmlessness and not an argument about whether it was error to exclude the other. The fact that she was able to do some stuff doesn't really address whether it was error to not let her do other stuff. Your Honor, I think, again, this goes back to the balancing that the court has to engage in under Rule 4 or 3. If we're looking at the undue prejudice, the likelihood of confusion to the jury, and I see I'm about to run out of time if I can finish my response.   This is core Rule 4 or 3 analysis, where if we've got all this other evidence and we've got this, like, very large, intractable national issue that we might... But that, that, that, that, I get that with respect to January 6th or 2020 election. That, to me, that, just me, I can appreciate a judge saying that is removed, even though it's potentially relevant, it's removed enough and explosive enough that we're not going there. But, you know, I think that's a harder argument with the other county evidence. And because that's stuff that these defendants themselves are doing in very similar situations, and it's kind of framed as a conspiracy. And the district court says, well, you know, we got the... And the plaintiff's approach to this is, well, okay, I have circumstantial evidence. And you can prove conspiracies by circumstantial evidence. And, you know, to me, that's a harder argument for you. I think your preservation argument is better, though. And I think the fact that the court said you can pursue that as it relates to the defendant's conduct, but apparently that wasn't pursued, it may mean it was a choice, not an exclusion. But I have a harder time, you know, understanding how similar activity, one county, two counties over, you know, isn't pretty significant evidence if they had it, identified it, and called it. It's that second part of Your Honor's question that's the problem. I don't know what that evidence was. I used to be a criminal prosecutor, Your Honor, and if I had somebody in a room, you know, within a few minutes or hours or whatever before something happened, you better believe I would be trying to introduce that evidence. But here, I don't know who, what, where, when, why. I just have this generic suggestion that there was this connection. In the absence of more, I can't even make an effective argument as to why it wouldn't be relevant, Your Honor. Thank you. All right. Thank you. Mr. Parson, you have three minutes. Your Honors, thank you. Just a couple of points. The Court is quite correct to notice that the theories propounded in defense of the appellee's decision to fire Christine Gibbons were the ladies didn't get along, sort of the image of two cats not getting along. That was their defense. What we don't have is what started it because we were not allowed to introduce that. Well, could you just respond to how your friend on the other side concluded her argument? Just literally the last thing that your colleague said was, I mean, maybe this other county evidence, sure, but in the absence of evidence of who was going to testify, what they were going to testify to happened, it's very hard to assess whether or not that could or could not be excluded under 401 or 403. We told the judge what the evidence would be. No, you didn't because you haven't told me either. You said there will be evidence of a meeting, but that's not who's there, what they said, who's talking to who. The judge actually said, we said, you know, Gibbs and Atroxel were at these meetings and then after that the boards of other counties. Lots of people were at these meetings. I can see about, I don't know, 20 people in this room right now, and I would say, if I was asking someone's role in what's happening right now, I would need to know more than they were in the room. Actually, the judge said, no, even if you could show that, and even if you could show that afterwards such and such a vote was taken, Judge Ballou, again, however well-intentioned, he actually said, that's not relevant. He didn't even say 403. He simply discounted as circumstantial evidence. We've got to be able to introduce that. That's an interesting question. I'm sorry. No, no, you're all right. Yeah, I asked your colleague that, you know, lots of things, especially conspiracies, sometimes are proved by circumstantial evidence. And so I'm trying to get this straight. That's the way we would look at a conspiracy cause of action. But does the fact that that's the way we would look at a conspiracy cause of action mean when you don't have a conspiracy cause of action, the judge can question whether there's enough evidence of it? In other words, are those two one-to-one, you know, are those the same question? They aren't. Our evidence of other counties goes to motive. The folks who made this decision to fire Christine Gibbons were also about trying to get other counties to do it. That's what our proffer was, and that's what the judge, as I say, excluded categorically. And you didn't, you know, the judge said you could, the defendant's conduct is relevant. Did you ask the defendants anything about that? I think we tried. The problem is the judge had already said. Is there somewhere where you, in trial, you said, Mr. Troxell, Ms. Gibbs, I want to ask you about, you know, what went over in County ABC. Did that, I mean. No, because the judge had already said it would be irrelevant. That's the ruling we so passionately disagree with. So we were stuck. We want to respect the court. And the reference where he said you can talk about defendant's conduct, your view is you thought the prior rulings, you know, essentially meant that was not really something he was offering up? He said no. He said we could not, well, let me say specifically, I see my time's run out. If I may just try to answer this. The judge actually said to us in the pretrial, I don't think it's relevant just to show the circumstantial evidence. That, it seems to me, is on the reversible side of that line. Then you move to reconsider. And then when you move to reconsider, he said you can talk about the defendant's conduct. But he had already said we couldn't, that it would not suffice to be admissible if we had defendant's conduct. What he really said was unless you have evidence from somebody who turns and pierces the cone of silence between these folks and says what Ms. Gibbs or Mr. Croxall said to a fellow partisan, unless you have that, it's not admissible. So unless you have direct evidence. Correct. That's what the judge is basically saying. So circumstantial evidence was excluded. Even though in your Honor's reading, I don't dispute that the judge said in partial, it's not clear exactly what he was granting. He already had said if you bring that evidence, I won't accept it. I just don't get it. You move to reconsider. He says you can talk about the defendant's conduct. You say you're kind of confused about that in relation to the motion in Lemney reason, which I get. I mean, and I get that, you know, trials are stressful. It's hard to figure out. But, you know, if you say, Judge, does that mean I can ask these defendants about this, this or that at the other counties? I mean, you know, it looks to me like he's saying you can ask the defendants about what they did. Maybe he didn't mean that. It seems to me. Well, the question whether you can ask is different from the question what he would do with it. And we expected an objection that would be sustained. So we felt completely stuck and robbed of the chance to make circumstantial evidence count. All right. Thank you. Thank you, Your Honor. All right. We'll ask the clerk to adjourn court and come down and greet counsel. This honorable court stands adjourned. God save the United States and this honorable court.
judges: Stephanie D. Thacker, A. Marvin Quattlebaum Jr., Toby J. Heytens